IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| INTERNATIONAL UNION OF | ) | |
| OPERATING ENGINEERS, LOCAL 917, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CV-143 |
| | ) | |
| ES&H, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff, International Union of Operating Engineers, Local 917 ("IUOE"), has brought this action pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for enforcement of an arbitration award. Now before the court for consideration of the cross motions for summary judgment filed by the parties: "Plaintiff, International Union of Operating Engineers, Local 917's Motion for Summary Judgment to Enforce Arbitration Award" [doc. 16] and "Defendant ES&H, Inc.'s Motion for Summary Judgment" [doc. 13]. The parties have had an opportunity to file responsive pleadings [docs. 24, 25, 26]. Oral argument is unnecessary, and the motions are ripe for the court's determination.

*Background*

Defendant ES&H, Inc. ("ES&H" or "the Company") holds the maintenance contract for roads and grounds at the U.S. Department of Energy facility in Oak Ridge, Tennessee and has since February 2008. ES&H is a party to a collective bargaining agreement ("CBA") with the Knoxville Building and Construction Trades Council ("Trades Council") that became effective June 24, 2008. The Trades Council, whose members are also signatories of the CBA, consists of the IUOE, Laborers International Union Local 818 ("Laborers Union"), International Brotherhood of Teamsters Local 519 ("Teamsters"), and International Union of Painters and Allied Trades, Local 437 ("Painters").

While the CBA was being negotiated, ES&H learned about two preexisting issues concerning work assignments of Trades Council union members, and ES&H notified the Trades Council President of the disputes. The work assignment disputes involved bush hogging with farm tractors and street sweeper work. The IUOE maintains that both work assignments were performed by its members and that it has jurisdiction over the work. ES&H assigned the work to two other unions.

The provisions of the CBA that are relevant to this case are as follows:

**Article V. Arbitration**
**Section 1**. The Union may appeal the Company representative's decision at Step 3 of the grievance in accordance with the following procedure and limitations:

    A. Only specific grievance appeals as to a charge of violation of this Agreement may be submitted to an

arbitrator.

* * *

D. 6. The arbitrator shall have no power to Add to, Subtract from or modify any of the terms of this Agreement;

## Article XVI. Work Assignments

**Section 1**. It is the intent of the Company and the Union that this Agreement shall govern the relationship between the Company, the Union, and the employees in the performance of all work within the scope of the Company's aforementioned Contract.

* * *

**Section 3**. The Company will follow the practice of assigning work on the general principal that the craft which would normal be entitled to install equipment of material or perform the construction work would be assigned to the maintenance of the equipment or material or the repair work in connection with the building or facility.

* * *

**Section 5**. When the work to be performed is of a nature that a determination cannot be made on the above principle, the Company will assign the work to those employees who in its judgment are best qualified to perform the work.

**Section 6**. The Union agrees that it will give full consideration to the interest of the Company and the DOE in carrying out the work in the most efficient and economical manner possible; therefore, it is agreed that if the Union desires to question the Company's assignment of work to the various crafts, the following procedure shall apply:

A. The Union shall meet with the officials of the Company and discuss the assignment that is objectionable.

B. Failing satisfactory settlement as the result of the discussions referred to above, the Union committee shall meet with officials of the labor organization questioning the Company's work assignment, resolve the dispute, and reduce its decision to writing for consideration by the Company.

C. The Company will study the feasibility of the Union committee's determination and within five (5) calendar

3

days after its receipt give the Union a written decision on
the disputed work assignment.
D. The Union may, after receipt of the Company's decision,
appeal the matter in accordance with the subject to Article V,
Arbitration.

On October 3, 2008, the Trades Council convened a meeting of the labor organizations involved in order to resolve the work assignment issue. The Laborers Union and Teamsters, who had been given the work assignments, voted in support of the Company's decision. The IUOE voted against the Company's decision. The Trades Council notified ES&H by letter dated October 8, 2008, that the majority vote had agreed with its decision regarding the work assignments. By letter dated October 15, 2008, ES&H notified the Trades Council that its "decision in this matter is consistent with the Unions' decision and therefore resolves the two open jurisdictional disputes."

The IUOE filed a grievance seeking to arbitrate the issue of the work assignments. In response, the Company stated that in its opinion the grievances were not subject to arbitration. Nevertheless, ES&H and the IUOE requested a panel of arbitrators and selected an arbitrator.

The case was scheduled for an arbitration hearing on April 28, 2009. In a letter dated March 30, 2009, addressed to representatives of ES&H and the IUOE, the arbitrator noted, "It is the position of ES&H that the above grievances are not arbitrable because they have been previously resolved by decision of the Knoxville Building & Construction Trades Council, agreed to and implemented by ES&H under Article XVI of the collective bargaining

4

agreement." The letter also reflects that other members of the Trades Council would be invited to appear at the hearing or present their positions in writing.

The President of ES&H, William Garibay, informed the President of the Trades Council, Ray Whitehead, in a letter dated April 21,2009, that "we will not participate in the arbitration proceeding. It is our firm opinion that any such proceeding would be inconsistent with both our Labor Agreement and our bargaining obligation with the KBCTC [Trades Council]."

In a letter dated April 22, 2009, addressed to counsel for ES&H and the IUOE, the arbitrator confirmed matters discussed in a telephone conference. The letter reflects that the Teamsters and Laborers Union wrote letters to the Company's president requesting that the Company not entertain the grievances. Also noted in the arbitrator's letter is a reference to correspondence he received from the attorney representing ES&H, in which he stated "that the Company's position is that the matter is not arbitrable, and that it would be clear error to proceed with the arbitration." According to the arbitrator's summary of the telephone conference, counsel for the Company "requested that the hearing be continued in order to permit the parties and the other affected labor organizations to submit their positions regarding arbitrability and in that way possibly avoid the necessity of a hearing."

The hearing was postponed, and a deadline was set for the parties to submit their written positions regarding arbitrability. On June 15, 2009, the arbitrator issued his decision concerning arbitrability, in which he concluded that the work assignments are

arbitrable and that the case would proceed to a determination on the merits. The arbitrator's decision reflects that ES&H submitted a written position statement regarding arbitrability as did the IUOE, the Teamsters, and Laborers Union.

The case proceeded to a hearing on the merits on September 22, 2009, with the IUOE being the only party participating. The arbitrator issued his opinion on December 2, 2009. It states, "Following the arbitrator's decision on the issue of arbitrability, ES&H, the Teamsters Union and the Laborers Union separately gave notice that they would not participate in further arbitration proceedings based on their position that the arbitrator had no jurisdiction to decide the merits of the grievances." The arbitrator found that the disputed Company work assignments were in violation of the CBA and granted the grievances. He directed that ES&H assign the bush hogging and mowing with a farm tractor and bush hog attachment work to IUOE employees. He also directed that ES&H assign the street sweeper vehicle work to IUOE employees.

Plaintiff filed this civil action to enforce the arbitrator's decision. According to the amended complaint, the defendant has ignored the arbitrator's decision and assigned the street sweeper work to the Teamsters and the farm tractor work to the Laborers Union. Plaintiff also alleged that ES&H has not paid its portion of the arbitration expenses. The case is now before the court on the parties' cross motions for summary judgment.

## II.

*Standard of Review*[1]

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Id.* at 323. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Id.* at 325 (emphasis in original).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of

---

[1] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010. The motions for summary judgment before the court were filed November 2, 2010, and are governed by the earlier version of Rule 56. *Wheeler v. Newell*, No. 09-4549, 2011 WL 204457, at *3 n.3 (6th Cir. Jan. 24, 2011) ("The motion for summary judgment in this case was filed prior to December 1, 2010, and is governed by the version of Rule 56 that was in effect at the time the motion was filed.").

7

a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

### III.

*Analysis*

**Positions of the Parties**

The IUOE contends in its motion for summary judgment that the issue of jurisdiction has already been decided. The parties jointly selected an arbitrator who had the parties submit written submissions concerning their positions on arbitrability. While arbitrability is an issue for the courts, parties can agree to arbitrate that issue, and the parties here agreed. The IUOE argues that by submitting the issue of arbitrability to the arbitrator, the Company waived any claim to having the court decide the issue. The IUOE also contends that it is the proper party to bring a grievance and that the Trades Council is not the sole entity entitled to seek arbitration pursuant to the CBA.

8

The IUOE also argues that in spite of the fact that the Company did not participate in the hearing on the merits, the decision of the arbitrator should be enforced. The hearing was properly conducted and the opinion of the arbitrator is correctly reasoned according to the IUOE.

In response, ES&H argues that the underlying work assignment dispute was not arbitrable by the IUOE. The Company maintains that the proper procedure to resolve the dispute under the CBA was followed, and no issue exists for arbitration. The Company further maintains that the IUOE is not the proper party to arbitrate the subject dispute because the "Union" in the CBA is referred to as the Trades Council, not individual union members.

ES&H also contends in response that it did not waive any rights by participating in the arbitration on the issue of arbitrability. The Company contends that it has "remained steadfast" in its position regarding arbitrability, including giving notice after the decision on arbitrability that it would not participate further in the proceedings on the merits because it believed the arbitrator did not have jurisdiction to decide the merits of the grievances.

The Company makes two arguments in its motion for summary judgment. It first argues that the IUOE failed to join necessary, required, and proper parties in this lawsuit as defined by Federal Rule of Civil Procedure 19. The Company contends that the Trades Council, Teamsters, and Laborers Union should have been made parties in this case.

In response, the IUOE argues *inter alia* that this is an action to enforce an arbitration award in a case that was correctly styled, *In the Matter of: ES&H, Inc., Employer, and International Union of Operating Engineers, Local No. 917*. No additional parties need to be added.

The Company's second argument is that the work dispute in not an arbitrable issue under the CBA. The Company contends that the CBA outlines the procedure for resolving work assignment disputes without the need for arbitration, and those procedures were followed in this case, so there is nothing to appeal to arbitration. Thus, it is the Company's position the work assignment disputes are not arbitrable under the CBA. However, even if the underlying work assignment dispute is arbitrable, ES&H contends that the IUOE is not the proper party to pursue arbitration. ES&H argues that only the Trades Council, the "Union" as defined in the CBA, can pursue arbitration.

The IUOE in response argues that the work dispute is arbitrable; however, that issue is not before the court. The IUOE contends that the Company had the opportunity to vacate the arbitrator's award but chose to ignore it. Now the Company through summary judgment is in effect attempting to vacate the arbitrator's award, something which is very difficult to do because of the narrow scope of review.

The IUOE also responds that it is the proper party to bring the arbitration. This fact it argues is confirmed by the president of the Trades Council who opined in writing that individual parties to the CBA can pursue arbitration.

10

**Arbitrability**

The issue of arbitrability of a particular dispute is a question to be decided by the court. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). However, in the Sixth Circuit, "although a court is usually the proper venue for decisions about arbitrability, if the parties 'clearly and unmistakably' submit the issue to the arbitrator 'without reservation,' then the parties have waived their right to have a court make the decision." *Cleveland Elec. Illuminating Co. v. Utility Workers Union Of Am.*, 440 F.3d 809, 813 (6th Cir. 2006) (citing *Vic Wertz Distrib. Co. v. Teamsters Local 1038*, 898 F.2d 1136, 1140 (6th Cir. 1990); *Interstate Brands Corp. v. Chauffeurs, Teamsters, Warehousemen & Helpers Local Union No. 135*, 909 F.2d 885, 890 (6th Cir. 1990)).

In *Vic Wertz*, the Sixth Circuit stated:

> In the present case, the parties submitted the issue of arbitrability to the arbitrator rather than reserving the question for initial determination by the court. Agreement to have the arbitrator decide the issue of arbitrability may be implied from the conduct of the parties in the arbitration setting. Because the parties clearly and unmistakably submitted the issue of arbitrability to the arbitrator without reservation, we will review the arbitrator's decision on arbitrability under the same deferential standard employed when reviewing an arbitrator's ruling on the merits. Therefore, the arbitrator's decision on arbitrability will be affirmed unless it fails to draw its essence from the collective bargaining agreement.

*Vic Wertz*, 898 F.2d at 1140 (internal quotation marks and citations omitted).

The Sixth Circuit in *Cleveland Electric* summarized the issue of arbitrability in *Interstate Brands* as follows:

11

In *Interstate Brands*, the union filed a grievance related to the dismissal of one of its members. The company participated in the arbitration proceedings on the issue of arbitrability as well as the merits, but later complained that the issue of arbitrability was a question for the court. The court, relying on *Vic Wertz*, held that an agreement to have the arbitrator decide the issue of arbitrability will be implied where the parties did not bring the issue to the district court in the first place. Thus, the company waived its right to have the court decide the arbitrability question by participating in the arbitration proceedings.

*Cleveland Electric*, 440 F.3d at 813 (internal citations omitted).

*Cleveland Electric* involved a dispute over changes made to retirees' health benefits by the Company, Cleveland Electric. The Union alleged that the changes were a violation of the collective bargaining agreement ("CBA"). The dispute moved through the grievance process to arbitration "with Cleveland Electric contending all along the way that the Union's grievance was not arbitrable with respect to the retirees because they were not employees covered by the CBA." *Id.* at 811. The parties submitted to the arbitrator the issue of arbitrability. *Id.* "Importantly, at arbitration, Cleveland Electric did not argue that the arbitrator had no authority to decide the issue of arbitrability. Rather, Cleveland Electric's argument focused solely on the arbitrability of the retires' health benefits." *Id.* The Sixth Circuit also noted that Cleveland Electric did not question whether the arbitrator had the authority to determine the issue of arbitrability until it raised the question for the first time in its brief to the district court. *Id.* "The district court found that the parties submitted the issue of arbitrability to the arbitrator 'without reservation' and that Cleveland Electric thereby waived its right to have the issue decided by the court." *Id.* On appeal, Cleveland Electric

12

contended that the district court erred in finding that it had waived its right to have the issue of arbitrability decided by the court.  *Id*. at 812.

The Sixth Circuit distinguished *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995), a case Cleveland Electric had relied on in support of its position.  *First Options* had held that "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." *Id*. at 944 (quotation marks and citation omitted).  The Sixth Circuit concluded that "*First Options* did not involve a union or a collective bargaining agreement, so there was no underlying agreement between the parties providing for arbitration.  The issue was whether private parties could be forced to arbitrate the issue of arbitrability just because they filed a brief with the arbitrator objecting to the arbitrator's jurisdiction."  *Cleveland Electric*, 440 F.3d at 813.

Ultimately, the Sixth Circuit in *Cleveland Electric* concluded that the circumstances of the case were more like those in *Interstate Brands* than *First Options* and found as follows:

> Cleveland Electric Submitted the question of arbitrability to the arbitrator for his determination, and we can find nothing in the record to indicate that Cleveland Electric wanted to reserve the question of arbitrability for the court.  The district court found, and this court agrees, that Cleveland Electric waived the issue of who had the power to decide the arbitrability of the retirees' grievance by submitting the matter to arbitration "without reservation."

*Cleveland Electric*, 440 F.3d at 813-14.

13

The IUOE argues that the issue of arbitrability was submitted to the arbitrator by agreement of the parties and that ES&H waived any claim to having the court adjudicate the issue. Without citation to any authority, ES&H argues that it did not waive the issue of arbitrability by its participation.[2] The circumstances in this case are similar to those in *Cleveland Electric*. In this case, the Company's position all along has been that the work assignment dispute was not arbitrable. Prior to and when the issue was actually submitted to the arbitrator, the Company did not argue that the arbitrator did not have the authority or power to decide the issue of arbitrability. Rather, similar to *Cleveland Electric*, the Company's argument continued to focus exclusively on its contention that the dispute had been resolved and there was nothing left to arbitrate. ES&H submitted to the arbitrator "without reservation" the arbitrability of the work assignment dispute and therefore waived the issue of who had the power to decide the issue of arbitrability. *Id.*; *see also Kalmar Indus. USA LLC v. Int'l Brotherhood of Teamsters Local 838*, 452 F. Supp. 2d 1154, 1162 (D. Kan. 2006) ("[T]he Company went beyond merely arguing arbitrability: it submitted the question of arbitrability to the Arbitrator for his determination as a 'threshold issue'. . . . The Court can find nothing in the record to indicate that the Company reserved the question of arbitrability for the court. Accordingly, the Court finds that the Company voluntarily agreed to submit the issue of arbitrability to the Arbitrator."). While ES&H contested that the underlying work assignment dispute was not arbitrable, it did not separately argue that the

[2] Neither party cited the court to any Supreme Court or Sixth Circuit authority pertaining to this issue.

14

arbitrator did not have authority to decide the issue of arbitrability. Rather, it submitted the issue of arbitrability to the arbitrator for his determination without reserving the question of arbitrability for the court.

Since the court has found that the parties submitted the issue of arbitrability to the arbitrator, the decision of the arbitrator that the work assignment dispute was arbitrable is entitled to deferential review. *Cleveland Electric*, 440 F3d. at 814 (citing *Vic Wertz*, 898 F.2d at 1140); *see also First Options*, 514 U.S. at 943. "The arbitrator's decision will not be disturbed unless it fails to draw its essence from the collective bargaining agreement." *Cleveland Electric*, 440 F.3d at 814 (citing *Vic Wertz*, 898 F.2d at 1140) (internal quotation marks omitted). When the parties submit the issue of arbitrability to the arbitrator, the "decision on arbitrability [is reviewed] under the same deferential standard employed when reviewing an arbitrator's ruling on the merits." *Vic Wertz*, 898 F.2d at 1140.

In this case, the arbitrator's decision on arbitrability does draw its essence from the CBA. The arbitrator set out the relevant portions of the CBA, including "Article V Arbitration" and "Article XVI Work Assignments." He also cited to the well recognized principles from the Supreme Court's "Steelworkers Trilogy" cases that address arbitrability.[3] In his analysis, the arbitrator determined that the issue of arbitrability involves two sub-issues: whether an individual signatory to the CBA, i.e. the IUOE, has the right to appeal a

---

[3] These cases are *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).

15

case to arbitration in its own right apart from the Trades Council; and whether the majority

vote decision of the union committee under Article XVI(6)(D), agreed to by the employer,

precludes the grievance from being appealed to arbitration.

With regard to the first sub-issue, the arbitrator initially observed how the term

"Union" was used and referred to in the various sections of the CBA. He then engaged in

a closer look at Article XVI and observed that in sections 6 and 6(A) the term "Union"

"refers to the individual labor organization which disputes the work assignments. In the

instant case, IUOE (not the Trades Council) desired to question the Employer's work

assignments, and IUOE (not the Trades Council) met with the Employer to discuss the

assignments." The arbitrator then noted that the "Union committee" referred to in sections

6(B) and 6(C) in this case consisted of representatives of the three individual labor

organizations affected by the work assignment dispute.

Also included in the arbitrator's analysis was a review and application of the

materials submitted with the position papers of the parties. He considered the letter of Trades

Council president Ray Whitehead regarding his position that an individual signatory party

to the CBA can appeal a case to arbitration. The Whitehead letter states in pertinent part as

follows:

> It has been questioned by some of the signatory participants
> whether Article XVII, Section 6(D)[4] can be undertaken by an

---

[4] While the letter refers to "Article XVII, Section 6(D)," the context of the letter clearly
indicates that Mr. Whitehead was referring to "Article XVI, Section 6(D)," the section in the CBA
involving work assignments that is at issue in this case.

16

individual signatory party. In reading through the whole agreement it refers back to Article V for processing Article XVII, Section 6(D). This language (Article V) has historically been a part of this agreement with previous employers. Article V, historically, has been utilized by individual signatory parties to this agreement in the past. To this end it is my belief and understanding that Article XVII, Section 6(D) can be processed by individual signatory parties to this collective bargaining agreement.

The IUOE also submitted in support of their position documentation from two prior arbitration decisions under predecessor employers that demonstrate that individual labor organization took cases to arbitration in their own name. The arbitrator noted that while the Company, Teamsters, and Laborers Union argue that any arbitration case under the CBA must be pursued in the name of the Trade Council not the individual labor organization, "[t]hat has clearly not been the practice historically." Ultimately, the arbitrator concluded that the CBA in Article XVI, Section 6 and Article V "does permit an individual labor organization to pursue a grievance to arbitration in its own name."

The arbitrator next considered the second sub-issue concerning arbitrability: whether Article XVI, Section 6 precluded arbitration of the jurisdictional work dispute, i.e. whether the majority vote decision of the labor organizations, agreed to by ES&H, precludes the IUOE from appealing the case to arbitration. Initially, the arbitrator distinguished authority offered to show that the work jurisdictional dispute was not subject to arbitration. The arbitrator concluded that in this case Article XVI, Section 6(D) does not exclude such a dispute from arbitration. That provision provides, "The Union may, after receipt of the

17

Company's decisions, appeal the matter in accordance with the subject to Article V, Arbitration." The arbitrator found, "Rather than jurisdictional disputes being excluded from arbitration, they are specifically made subject to arbitration."

The arbitrator then reviewed what had occurred when the parties had followed the procedures under Article XVI and concluded there was no mutually agreed settlement of the dispute as far as the IUOE was concerned. He found as follows:

> The unions voted and the Employer acted consistent with their previous positions concerning the work assignments. Nonetheless, the majority vote under these circumstances - - the vote of the two labor organizations who had an obvious interest in the outcome, together with the concurrence of the Employer who had a similar interest - - does not rise to the level of a settlement of the grievances such as would preclude IUOE from seeking a decision by an impartial arbitrator.
>
> Article XVI, Section 6(B) of the bargaining agreement provides for an internal union decisional procedure for "consideration by the Company." The bargaining agreement does not address what happens when there is disagreement between the labor organizations during the Section 6(B) procedure. Under Section 6(C), the Employer is then to ". . . study the feasibility of the Union committee's determination and give the Union a written decision on the disputed work assignment." Section 6(D) provides: "The Union may, after receipt of the Company's decisions, appeal the matter in accordance with the subject to Article V, Arbitration." The arbitrator has previously decided that the individual labor organizations may appeal to arbitration in their own right. The arbitrator is of the opinion that under the circumstances of this case IUOE is not precluded from appealing to arbitration the merits of the two disputed work assignments.

The arbitrator's decision on the issue of arbitrability was the result of his interpretation and construction of the CBA. "[A]s long as the arbitrator is even arguably

18

construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Vic Wertz*, 898 F.2d at 1141 (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). The arbitrator herein was indeed construing and applying the contract, and his decision on arbitrability draws its essence from the CBA.

Also relevant is that the Steelworkers Trilogy established a "presumption of arbitrability." *Cleveland Electric*, 440 F.3d at 814 (citing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960)). "If the collective bargaining agreement contains an arbitration clause, the Supreme Court found that it should be presumed that the parties intended to arbitrate the dispute unless there is 'positive assurance' that the arbitration clause does not cover the matter." *Id.* (citation omitted). Accordingly, the court agrees with the arbitrator's decision that the work dispute was appealable to arbitration by the IUOE and finds that the work dispute was properly before the arbitrator.

### Arbitrator's Award

A federal court's review of a labor arbitration decision is "not just limited[;] it is very limited." *Mich. Family Res., Inc. v. Serv. Employees Int'l Union*, 475 F.3d 746, 752 (6th Cir. 2007) (internal quotation marks and citations omitted).

> The standard of review in arbitration cases is very narrow. An arbitrator's decision is proper if it draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice. This is because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge and thus it is the arbitrator's view of the facts and of the meaning of the

19

contract that they have agreed to accept.  As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convince he committed serious error does not suffice to overturn his decision.

*Mercy Mem'l Hosp. Corp. v. Hosp. Employees' Div. of Local 79*, 23 F.3d 1080, 1083 (6th Cir. 1994) (internal quotation marks and citations omitted).  The Sixth Circuit set out questions to consider when determining whether an arbitrator's award should stand.  The Court stated:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award?  And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" error in resolving the merits of the dispute.

*Mich. Family Res.*, 475 F.3d at 753.

The court finds no basis for vacating the arbitrator's award.  In his analysis, the arbitrator first addressed the issue concerning the Company's failure to participate in the arbitration hearing.  He relied on the policies and procedure from the Federal Mediation and Conciliation Service ("FMCS"), under which he had been selected by the parties.  In his decision, the arbitrator quoted from section 1404.13 of the FMCS arbitration policies and procedures which deals with the conduct of hearings and which provides in pertinent part:

> All proceedings conducted by the arbitrators shall be in conformity with the contractual obligations of the parties. . . .

20

> The conduct of the arbitration proceeding is under the arbitrator's jurisdiction and control, and the arbitrator's decision shall be based upon the evidence and testimony presented at the hearing or otherwise incorporated in the record of the proceeding. The arbitrator may, unless prohibited by law, proceed in the absence of any party who, after due notice, fails to be present or to obtain a postponement. An award rendered in an ex parte proceeding of this nature must be based upon evidence presented to the arbitrator.

29 C.F.R. § 1404.13; *see also Mach. Movers, Riggers & Mach. Erectors Union Local 136 v. GES Exposition Servs., Inc.*, 105 F. Supp. 2d 879, 880 (N.D. Ill. 2000) ("If, however, an arbitrator is in place, and the parties are aware of the time and place of the arbitration, the arbitrator can proceed despite the failure of one of the parties to attend.") (citing *Toyota of Berkeley v. Auto. Salesmen's Union, Local 1095*, 834 F.2d 751, 754 (9th Cir. 1987)).

The record reflects that the Company received notice and did not seek a postponement. It affirmatively informed the arbitrator that it would not participate.

In his award opinion, the arbitrator initially cited to authority for the known arbitration principle that applies to determining work assignment disputes as well as other issues. That principle has the language of the collective bargaining agreement as the starting point. When the agreement specifically refers to the work issue, the factor is controlling. If the agreement language is unclear, ambiguous or silent, past practice will control resolution of the dispute.

With this principle in mind, the arbitrator then looked specifically to Article XVI of the CBA relating to work assignments which provides, "[T]he Company will follow

the practice of assigning work on the general principle that the craft which would normally be entitled to install equipment or material or perform the construction work would be assigned to the maintenance of the equipment or material or the repair work in connection with the building or facility." The arbitrator concluded about this provision, "While this language does not specifically apply to reassignment of work from one classification to another, it does recognize that work should be assigned to employees within the craft which 'normally' performs the work. It may also be reasonably viewed as recognizing that established past practice is a significant restriction on the right of management to assign work."

The arbitrator then considered the work dispute issues, first the farm tractor mowing attachment assignment and then the street sweeper assignment. With each issue he applied his interpretation of the CBA and employed the applicable principle of arbitration cited in his analysis. As to each issue, the arbitrator found that ES&H violated the CBA by reassigning the work: the bush hogging work to employees represented by the Laborers Union and the street sweeping work to the Teamsters. In doing so, the arbitrator was "arguably construing and applying the contract," and his award will be enforced.

Accordingly, the court concludes that the work dispute was arbitrable and that the issue was put before the arbitrator by the parties for his determination. The court further concludes that the arbitration award will be enforced.

In reaching the above conclusions, the court has already addressed the Company's contention that the work dispute is not arbitrable and that only the Trades Council and not the IUOE could bring the dispute to arbitration. The Company, however, also argues that the IUOE failed to include in this lawsuit necessary and required parties under Rule 19. The court is of the opinion that the parties herein are appropriate and adequate.

The case was styled before the arbitrator as: *In the Matter of: ES&H, Inc., Employer and International Union of Operating Engineers Local No. 917*, naming only the IUOE, the party seeking the arbitration, and the Company. There is no need or purpose for the Trades Council to be made a party as the Council is of the opinion that an individual signatory to the CBA, as the IUOE, can on its own bring a dispute to arbitration. The Council's interest in that respect is aligned with the IUOE.

There is also no need to have the Teamsters and the Laborers Union in this action. Their interests are aligned precisely with the Company's. Complete relief can be afforded without actually having these two entities in this case. If the Company's arguments were to prevail, then the Teamsters and Laborers Union would also prevail. If the IUOE prevails, the Teamsters and Laborers Union will lose the work assignments awarded to them, whether or not they are in this case as parties. Thus, in the court's opinion, the Company's necessary party argument has no merit.

**Arbitration Expenses**

The amended complaint and IUOE's motion for summary judgment indicate that ES&H has refused to pay its share of the arbitration expenses. The CBA calls for the Company to share the costs of obtaining the arbitrator. Article V, Section 1(C)(2). The CBA also calls for the Company to pay for half of the transportation, traveling and related expenses for the arbitrator related to a hearing. Article V, Section 1(G).

Pursuant to the CBA, it is appropriate that the Company pay its share of the expenses related to the arbitration. Therefore, the IUOE's motion for summary judgment will also be granted regarding the payment of expenses by the Company.

IV.

*Conclusion*

For the reasons discussed above, IUOE's motion for summary judgment seeking enforcement of the arbitrator's award will be granted. The motion for summary judgment filed by ES&H will be denied. An order consistent with this opinion will be entered.

ENTER:

_____
        s/ Leon Jordan
United States District Judge

Case 3:10-cv-00143-RLJ-HBG   Document 28   Filed 10/28/11   Page 24 of 24   PageID #: 536